This is a suit to recover workmen's compensation under the Employer's Liability Law of Louisiana, Act No. 20 of 1914, as amended.
The plaintiff, Frank Taylor, was employed by the defendant, Marion T. Fannaly, Inc. as a common laborer at the defendant's ice plant in Pontchatoula, Louisiana. He had been so employed for a few months prior to October 4, 1945, when, on that day, while acting within the scope of his employment, he sustained an accident in which his right leg and foot were crushed and broken. He was in the act of assisting in loading ice by means of a mechanical elevator when, accidentally, a block of ice fell on his foot causing the injury he sustained.
He alleges that at the time he was earning 40¢ an hour, working ten hours a day, seven days a week, and that as a result of his injury he has become permanently disabled from performing work of the kind he was accustomed to do and is therefore entitled to compensation as for total, permanent disability at the rate of 65% of $28.00 per week for the full period of 400 weeks.
He also alleges that after his injury, the defendant began paying him compensation in the sum of $13.64 a week and continued doing so until December 21, 1946, at which time payments were discontinued for no reason known to him and have since been refused. He prays for judgment in accordance with the allegations set out in his petition.
The defendant for answer admitted that plaintiff had been employed as stated by him and that on October 4, 1945, he suffered an injury from an accident but denies the nature and the extent of the injury as set forth by plaintiff in his petition. It alleges further that immediately following the accident plaintiff received treatment from Dr. Glenn T. Scott and was later taken to the Florida Parishes Hospital at independence, Louisiana, for treatment. It denies that plaintiff is permanently disabled and avers to the contrary, that he has entirely recovered from the injury he sustained and is now in as good, if not better physical condition, then when he started to work for it. Defendant disputes the amount of wages plaintiff claims he made per week and avers specifically that he averaged $20.99 per week, 65% of which amounts to $13.64 and it avers further that it paid him that amount for 63 weeks compensation.
Further the defendant sets out that plaintiff is suffering no disability as a result of *Page 913 
the accident described by him and has suffered no such disability since it ceased paying him compensation; that if he is under any disability whatever, it is the result of other causes which existed prior to the accident alleged by him and which are wholly disconnected therewith; that at the time he was employed he was crippled due to infantile paralysis or some other disease suffered in early childhood, which condition has existed practically throughout his adult life; that he has long since recovered from the injury as a result of the accident of October 4, 1945 and is now in better condition than he was before.
The Florida Parishes Charity Hospital filed an intervention in the suit claiming the sum of $318 for medical and hospital services in treating the plaintiff for the injury forming the basis of his demand and prays that in the event there be judgment in his favor its claim against him and the defendant herein, in solido, be recognized.
On the issues as thus presented the case was tried in the district court and resulted in a judgment in favor of the plaintiff awarding him compensation in the sum of $13.64 per week for a period not to exceed 400 weeks, beginning October 4, 1945, less the amount of compensation paid him by the defendant at the same rate for a period of 63 weeks. Judgment also awarded the Florida Parishes Charity Hospital the full amount of its claim, the sum of $318, to be paid by the defendant.
[1] The defendant has appealed and as there is no answer to the appeal on behalf of the plaintiff, we take it that he is satisfied with the amount of the award fixing the rate of compensation at $13.64 per week which according to the pleadings, appeared to be a disputed issue in the case.
Inasmuch as the employment and the accident are admitted, the only controverted points in the case seem to be whether or not the plaintiff had recovered from the effects of his injury at the time defendant ceased paying him compensation and secondly, if he suffers any further disability whether the same is due to the accident or is the result of a physical disability which has existed since his early childhood.
On the question of the nature and the extent of the injury and whether there are any remaining results we have to be controlled largely by the medical testimony in the case and in this regard we have, first, the testimony of Dr. Arthur William Bahmfelt, Jr., senior resident surgeon at the Florida Parishes Hospital who treated the plaintiff when he was transferred there. He states that plaintiff's right foot and leg had been severely injured, two bones in the lower leg being fractured and that they have not healed correctly. They have healed together but are not in true alignment. He claims that the plaintiff has ankylosis and a limitation of motion and in his opinion he should do no work that requires the use of weight on his ankle. He examined plaintiff in court at the time he was testifying and stated that he found the condition to be essentially the same as it was the last time he had seen him and that in his opinion he is permanently and totally disabled as far as the use of his ankle is concerned.
On cross-examination this doctor was questioned at length with regard to the plaintiff's physical condition prior to the accident and what effect that might have on the present disability which he claims, but apparently the doctor had not taken that into consideration as he states that he made not such examination as to the matter he is being interrogated about. He was also questioned with respect to the form of treatment recommended in injuries of this kind and whether non-use of the injured member would tend to produce the disability but he seems to be very positive in his opinion that in this case disability is due entirely to the injury.
The only other medical testimony in this case comes from Dr. Glenn Scott to whose office plaintiff was sent following the accident. Dr. Scott was not in his office that day and plaintiff was seen by another doctor who was replacing him. This doctor's name is not given and he did not testify. Dr. Scott did not examine him until December 30, 1946, and once again on January 20, 1947. His examination through x-ray revealed scars of a previous injury, which apparently was the injury of October *Page 914 
2, 1945, instead of October 4, as alleged in the petition and corrected in the testimony, and he says that the x-ray shows a completely healed fracture of the two bones in the ankle. The alignment, he stated was very good and looked functional. The examination he made on January 30, 1947 was of the entire bony structure of the body. He says that revealed some deformities. He was not able to say exactly when it began but he found it to be scoliosis or a disalignment in the spine, a very marked disalignment of the bones of the pelvis and a shortening of the left leg, involving the hip, the knee and the ankle of his right leg. His opinion was that this deformity occurred probably in childhood. He tried to obtain records from the Charity Hospital to verify this fact but was unable to do so. We understand his testimony to be that this condition which he found created a very marked impediment in the plaintiff in the use of his leg which did not permit free motion, and the awkward manner in which he had to move by reason of nature attempting to compensate for this injury he had had as a child, was the cause of his trouble. He had in effect become then disabled and his present disability might be attributed to that rather than because of the injury of October 2, 1945. In other words, we take his opinion to be that this man is not any more disabled now by reason of the accident than he was before. He thinks that he could not stand hard labor for more than a week at a time but believes that he couldn't do any more before the accident.
With this apparent conflict in the testimony of these two doctors, we find it necessary to resort to whatever lay testimony there is found in the record and when we examine it, we observe the strong preponderance to be that even with the inpediment he may have had prior to the accident, plaintiff, who is still a young man, performed as hard manual labor, no matter in which employment he was engaged, as the average working man. Numerous witnesses testified to that. The most important fact in this connection is that he had been employed by this defendant, and had rendered satisfactory work as a laborer, for some four or five months prior to the date of the accident on October 2, 1945. Therefore, if there is some disability now, the only conclusion we can draw is that it results from his accident and not from a previous condition which may have existed previously in his body.
[2] In spite of Dr. Scott's opinion that he thinks plaintiff has recovered from his injury to a degree where he is no more disable than he was before the accident, we find that he admits that even on the day of the trial, plaintiff's ankle was swollen and tender. Plaintiff himself complains of suffering pain when he places any strain on his ankle and that would seem most natural since Dr. Scott testified that it was still swollen and tender. That, to us, is added proof which supports plaintiff's claim of disability because the jurisprudence is definitely to the effect that no one is compelled to perform the duties of his employment whilst he is suffering pain in order to qualify for compensation under the Workmen's Compensation. Law.
[3] A careful consideration of all the issues presented in the case leads to the conclusion that plaintiff is entitled to recover. The trial judge decided in his favor and we certainly are unable to point to any manifest error in his holding on the question of plaintiff's right under the law and under the facts. He may have been handicapped physically before this accident but the fact remains that he was able to hold his own in any sort of work he engaged in as a manual laborer. If he has any disability at present, it is one arising independently of any physical condition he may have had before and was brought about solely by the accident and injury which he sustained on October 2, 1945.
Judgment affirmed at the costs of Defendant, appellant herein.
ELLIS, J., recused.
 *Page 30